Joseph Slavin, J.
Plaintiff sues the City of New York to recover the sum of $3,081.81 representing the interest on real estate taxes paid by him covering the period January 1, 1970 through January 1, 1976.
Plaintiff is the tenant under a lease to premises 1700-1710 Eastern Parkway, Brooklyn, N.Y. (Block 1460, Lot 73). The lease which began in 1967 called for the tenant to pay all real estate taxes, water rates and sewer rents. This plaintiff took an assignment of the lease dated May 29, 1970. The original tenant was a corporation of which he was an officer. Prior to May 29, 1970 plaintiff claims that the corporation received tax bills, and paid them as they came due. He testified that after the assignment no tax bills were received and that some time thereafter inquiry was made of the City Collector as to paying taxes. The claim is that he was told that the property was taken by the city in a condemnation proceeding.
Based upon this advice from the city collector’s office, plaintiff paid no taxes since they would not issue any tax bills. Other than making additional similar inquiries and receiving similar reprises, plaintiff did nothing. He did, however, continue to pay rent to the lessor under the lease.
Late in 1974 or early in 1975, he received a letter from the city (not produced by either side) that the property was now being taken by the city. It was for the first time that he consulted a lawyer. While the lawyer did not testify, we can see from the papers which make up Exhibit 1 in evidence, that an error was made by the city back in 1970 which was eventually uncovered.
The exhibit consists of a letter dated August 26, 1970 from one George Newman, Assistant Corporation Counsel in charge of Condemnation Division of the City Law Department addressed to the city collector which reads in part "that title vested in the City * * * on August 23, 1970 * * * for a project known as Second Amended Central Brooklyn Community Development Plan * * * including * * * Block 1460 — all lots”. (Emphasis supplied). This letter was transmitted to and received by the city collector on September 9, 1970. Based on *609 this advice the city collector ceased issuance of tax bills and refused payment of all taxes.
By letter dated March 3, 1975 addressed to the city collector from the condemnation division, headed "corrected copy”, the error was corrected so as to limit the taking in Block 1460 to 29 separately enumerated lots, excluding lot 73. (We should note that another error was also corrected under Block 1519.)
After the "error” was discovered and corrected (probably orally at first since Exhibit 2, a tax bill was issued by the city collector on January 30, 1975) that the city demanded all back taxes or else it would place the lot on an in rem status.
Plaintiff thereupon paid the first tax bill on February 10, 1975 paying $2,532.89 in interest. A year later, March 16, 1976, he paid Exhibit 3, this time paying interest allowable to the period prior to the discovery of the error of $1,268.92. Protests were lodged with each of the payments.
A notice of claim was duly filed, rejected by the city and this action followed.
The city defends, and moved to dismiss or else limit the recovery on several bases.
Initially they seek a dismissal urging that the action is barred pursuant to CPLR 217. That section pertains to article 78 proceedings. It is their position that this plaintiff should have instituted such a proceeding to review the taking of a vast tract of land by the city in what was then an ongoing urban renewal program. This contention is totally rejected. What standing, if any, did this tenant have to challenge the city’s right to take 25 various tax blocks (coequal with square blocks)? In order to even attempt to do so he would have had to have been given access to all of the Central Brooklyn Community Development plans and compare them block by block, lot by lot with the August 26, 1970 letter, a copy of which he never even knew existed. He would have had to attack Board of Estimate resolutions and review the Federal programs then in existence. Such a burden I refuse to cast upon this plaintiff.
The second defense is that the plaintiff "knew or should have known that the subject property was not condemned”. This too is rejected. How could he have known if it took the condemnation department almost five years to find its error. (Also, we note that the city never demanded rent from him. The city in its taking should have known who the tenant was *610 and if it owned the property, not let someone occupy the same rent free.)
We need not dwell on the defense under section D 17-16.0 of the Administrative Code. We are not dealing with an in rem matter here where the title remained with an individual and the city failed to send tax bills. Here the city claimed to own the property and refused to issue tax bills.
The last question in relation to the defenses is most interesting. It requests that if I find for plaintiff that the city be given an offset for the plaintiff’s possible use of the tax money to "earn interest”. I was requested to and I took judicial notice of the interest rates in effect during the 1970-1974 period. There is no question that the prime rate and savings bank rates were less than the 12% charged by the city on these taxes. However, in this case, I decline to exercise any equitable powers this court may have in the city’s favor. They in effect urge that the plaintiff should have anticipated the fact that he eventually would find and prove the error and deposit or invest the tax money so as to mitigate the damages. It is an interesting theory which I decline to accept.
Accordingly, judgment is granted to plaintiff for $2,532.89 with interest from February 10, 1975 plus $1,268.92 with interest from March 16, 1976 together with costs and disbursements.
Findings of fact and conclusions of law having been waived, let this decision be deemed the order of the court and all motions upon which decision was reserved and disposition of which are not implicit in this decision are denied.